IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>A1VPG68YJ5DJCK, A2L1NUSOOU6O5R, AINIYATING, ANNBERTHXX, ATHMILE CLOTHING US, BAYECAO, BULV, COZYPONY GLOBAL, CSMY STORE, DIWOLLSAM, ETEETI, FITORY-SHOES, FUYULACOM, GBLW, GJS US, GOHOM, GUANGZHOULEJUNKEJI, HARSSIDANZAR, HOME SLIPPER, HTESYQJLSHANGMAO, JIALL, JINMAOTONG-US, JNDZ, KASENLOYE, KAWQQFF, KEKE-US, KUOZHENSHANGHANG, LEIMOMAOYIYOUXIANGONGSI268, LEXINGSHANGMAOSHANGHANG, LRJSTOREE, LUXELOOM SHOP, NEWCHARMY, PARFEYING, PUTIANSHIZHENPINDINGSHENGMAOYIYO UXIANGONGSI, QXKJYXGS, QZNCBGGS, RAVENFISH, SEEROL, SHAN HUI US, SIBOXIUSI US, SINCERE WAY, SMAJONGS, STEBO, SYRESI, TANAMO SHOES, TANGDAO-US, TANSUHEAR, TOCONFFON FASHION STORE, US-ZHENGSANHU, WEIHAOHAOTIAN, XIEHUI STORE, YEZZQQ, YHHUUAA, YIDYEJK FASHION, YNPJQWP, YOUEBGE, and YOUNANZ,<br><br>Defendants. | Case No. 25-cv-09863 |

**DEFENDANT'S ANSWER TO COMPLAINT**

Defendant store BULV (hereinafter, the "Defendant Store") hereby answers the complaint as follows:

# I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

**ANSWER: Admitted.**

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since they directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under the seller aliases (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e- commerce stores that target United States consumers using at least the Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products featuring Deckers' trade dress to residents of Illinois. Defendants are committing tortious acts in Illinois, are engaging in interstate commerce, and have wrongfully caused Deckers substantial injury in the State of Illinois.

**ANSWER: With respect to itself, the Defendant Store admits as to the venue and personal jurisdiction but denies all the other allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

# II. INTRODUCTION

3. This action has been filed by Deckers to combat e-commerce store operators who design, manufacture, import, distribute, advertise, market, offer for sale, and sell in the U.S. footwear products that infringe upon Deckers' "Tazz® Trade Dress" (the "Infringing Product"). Defendants have created e-commerce stores operating under at least the Seller Aliases that are designing, manufacturing, importing, distributing, advertising, marketing, offering for sale, and selling Infringing Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Deckers has filed this action to combat Defendants' infringement of its trade dress, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Deckers has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trade dress rights as a result of Defendants' actions and seeks injunctive and monetary relief.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### III. THE PARTIES

**Plaintiff Deckers Outdoor Corporation**

4. Plaintiff Deckers Outdoor Corporation is a corporation organized and

existing under the laws of the state of Delaware with an office and principal place of business located in Goleta, California. Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975. Deckers owns and markets its footwear products under several distinctive trademarked brands, including UGG®.

**ANSWER: The Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

5. Deckers is well-known throughout the United States and elsewhere as a source of high quality footwear products, including the famous UGG brand of premium comfort-leisure footwear (the "UGG Products"). UGG Products are distributed and sold to consumers through retailers throughout the United States, including over 100 authorized retailers in Illinois, the ugg.com website and UGG Concept Stores.

**ANSWER: The Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

6. UGG Products have become enormously popular and even iconic, driven by Deckers' arduous quality standards and innovative design. Among the purchasing public, genuine UGG Products are instantly recognizable as such. In the United States and around the world, the UGG brand has come to symbolize high quality, and UGG Products are among the most recognizable premium footwear products in the world.

**ANSWER: The Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

7. For example, in 2000, UGG® boots were featured on Oprah's Favorite

Things® where Oprah emphatically declared on national television how much she "LOOOOOVES her UGG boots." Since then, the popularity of UGG® footwear has grown exponentially, with celebrities, such as Hailey Bieber, Kendall Jenner, Emily Ratajowski, and Megan Fox, among a myriad of others regularly seen wearing UGG® footwear, including the UGG® Tazz®.

**ANSWER: The Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

8.  In 2021, Deckers introduced the UGG® Tazz®, marketed and featuring the design elements protected under the Tazz® Trade Dress. Tazz® is a registered trademark in the United States owned by Deckers (Reg. No. 7,544,905).

**ANSWER: The Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**Defendants**

9.  Defendants are individuals or business entities of unknown makeup who own and/or operate the e-commerce stores under at least the Seller Aliases and/or other seller aliases not yet known to Deckers. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems, or redistribute products from the same or similar sources in those locations.

**ANSWER: The Defendant Store admits that it is a business entity residing in the People's Republic of China that conducts business throughout the United States. The Defendant Store denies any remaining allegations in this paragraph as to the Defendant Store. With respect to the other defendants, the Defendant Store lacks**

**knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

10. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). If Defendants provide additional credible information regarding their identities, Deckers will take appropriate steps to amend the Complaint.

**ANSWER: Admitted.**

11. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through at least the operation of its fully interactive e- commerce stores operating under the Seller Aliases.

**ANSWER: Defendant Store admits only that it operates an online storefront accessible to U.S. consumers and that it has fulfilled orders to Illinois. Defendant Store denies the remaining allegations and, as to other defendants, lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## IV. DEFENDANTS' INFRINGEMENT OF THE TAZZ® TRADE DRESS

12. Defendants have targeted sales to Illinois residents by setting up and operating an e-commerce stores that target United States consumers using the Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Infringing Products to residents of Illinois in the same transaction, occurrence, or series of transactions or occurrences. True and correct copies of screenshot printouts showing the e-commerce stores operating under the Seller Aliases selling the Infringing Products are attached as **Exhibit 1**.

**ANSWER: The Defendant Store admits that it is a business entity residing in the People's Republic of China that conducts business throughout the United States. The Defendant Store denies any remaining allegations in this paragraph as to the Defendant Store. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

13. Deckers has not granted any of the Defendants a license nor given Defendants any form of permission to use the Tazz® Trade Dress.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

14. On information and belief, Defendants are well aware of the fame and strength of the Tazz® Trade Dress and the goodwill associated therewith.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

15. On information and belief, Defendants have acted in bad faith and Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of the Infringing Products with Deckers, and/or the origin, sponsorship, or approval of the Infringing Products by Deckers.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## COUNT I
### Trade Dress Infringement – 15 U.S.C. § 1125(a)

16. Deckers hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: The Defendant Store repeats its answer as to the preceding paragraph.**

17. Since 2021, Deckers has sold the UGG® Tazz®, marketed and featuring the design elements protected under the Tazz® Trade Dress. The Tazz® Trade Dress is unique and inherently distinctive, and is comprised of the following non-functional elements:

   a) An embroidered braid around the opening of the upper;

   b) A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;

   c) A raised and rounded dome shaped toe;

   d) A brushed suede-like exterior; and

   e) A thick, platform outsole.

**ANSWER: Denied.**

18. The Tazz® Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry. Examples of its distinctive appearance as a whole are shown below:



**ANSWER: Denied.**

19. The design of the Tazz® Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Tazz® Trade Dress. The combination of features comprising the Tazz® Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Tazz®, the embodiment of the Tazz® Trade Dress, as a distinct product originating solely from Deckers.

**ANSWER: Denied.**

20. The UGG® Tazz®, the embodiment of the Tazz® Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Tazz® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tazz® and graced the pages of many popular magazines nationwide and internationally.

**ANSWER: Defendant Store admits that USPTO records reflect U.S. Reg. No. 7,544,905 for the word mark TAZZ owned by Deckers. Defendant Store denies the**

**remaining allegations, including that any registration for the word mark confers enforceable trade-dress rights in the product configuration described in the Complaint. See *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 3:23-cv-04850-AMO, ECF No. 203, at 7–8 (N.D. Cal. Oct. 2, 2025) (granting summary judgment to defendant on genericness defenses to Deckers's asserted product-configuration trade dresses).**

21. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Tazz® Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Tazz® Trade Dress.

**ANSWER: The Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

22. Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Tazz® Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Indeed, Deckers has sold millions of dollars' worth of UGG® Tazz®, the embodiment of the Tazz® Trade Dress. Accordingly, the Tazz® Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

**ANSWER: The Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

23. Upon information and belief, Defendants are competitors of Deckers

and Defendants introduced Infringing Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Tazz®.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

24. The Infringing Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Tazz® Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship, or approval by Deckers of the Infringing Products.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

25. Defendants' use of the Tazz® Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property. There are numerous other shoe designs in the footwear industry, none of which necessitate copying or imitating the Tazz® Trade Dress.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

26. Defendants' use of the Tazz® Trade Dress is likely to lead to and result

in confusion, mistake, or deception, and is likely to cause the public to believe that Infringing Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

27. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

28. Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendants' infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendants from continuing to infringe the Tazz® Trade Dress, or any designs confusingly similar thereto.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks**

**knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## COUNT II
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510, *et seq.*)

29. Deckers hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: The Defendant Store repeats its answer as to the preceding paragraph.**

30. Defendants are engaged in acts violating Illinois law including, but not limited to, passing off its Infringing Products as those of Deckers, causing a likelihood of confusion and/or misunderstanding as to the source of its goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine UGG® Products, representing that its products have Deckers' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

31. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the**

**allegations in this paragraph.**

32. Deckers has no adequate remedy at law, and Defendants' conduct is causing Deckers to suffer damage to its reputation and associated goodwill. Unless enjoined by the Court, Deckers will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**ANSWER: With respect to itself, the Defendant Store denies the allegations in this paragraph. With respect to the other defendants, the Defendant Store lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## AFFIRMATIVE DEFENSES

**1. Laches/Acquiescence and Estoppel (Equitable).**

To the extent Deckers seeks broad injunctive relief in a crowded field of look-alike shearling clogs after widespread third-party use of similar configurations, its delay and marketplace conduct bar or limit equitable relief. The record Deckers itself compiled in Exhibit 1 shows numerous independent sellers offering similar silhouettes, undercutting any claim that consumers view the configuration as Deckers' source signifier.

**2. Limitation on Monetary Relief (Equitable; No Willfulness; Failure to Mitigate).**

Any profits or enhanced damages are barred or limited absent willfulness and consistent with equity under 15 U.S.C. § 1117(a).

## COUNTERCLAIMS

Counterclaim-Plaintiff BULV (the "Defendant Store"), by and through counsel, for its counterclaims against Counterclaim-Defendant Deckers Outdoor Corporation

("Deckers"), alleges as follows.

**Parties, Jurisdiction, and Venue**

1. These counterclaims arise from Deckers' assertion of a purported "Tazz Trade Dress" against the Defendant Store in Case No. 1:25-cv-09863 (N.D. Ill.) under the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"). Jurisdiction is proper under 28 U.S.C. §§ 1331, 1338, and 2201–02. Venue is proper under 28 U.S.C. § 1391 because these counterclaims arise out of the same case or controversy pled in Deckers' Complaint.

2. An actual, immediate controversy exists because Deckers alleges the Defendant Store infringes a "Tazz Trade Dress."

**Count One**

**Declaratory Judgment of No Trade Dress Infringement (15 U.S.C. § 1125(a); 28 U.S.C. § 2201)**

3. Deckers has not identified a protectable, distinctive trade dress with the required precision; instead it asserts an imprecise articulation of commonplace features of shearling clogs/slippers/mini-boots, rather than a precise, source-identifying dress. The Northern District of California recently granted summary judgment against Deckers on materially similar UGG trade dress claims (Classic Ultra Mini and Tasman) on genericness grounds, finding Deckers failed to carry its burden and rejecting its attacks on third-party comparators.

4. The Defendant Store's product configuration does not constitute use of any protectable Deckers trade dress and is not likely to cause consumer confusion as to source, sponsorship, or approval.

5. Accordingly, the Defendant Store is entitled to a declaration that its accused product does not infringe any protectable "Tazz Trade Dress."

**Prayer (Count One):** Declaratory judgment of non-infringement and all further proper relief

## Count Two

### Declaratory Judgment That the Alleged "Tazz Trade Dress" Is Not Protectable

6. The alleged dress is comprised of basic shearling-clog/mini-boot elements widely used by numerous brands and consumers to identify the product rather than its source. In closely analogous litigation, the court granted summary judgment for Quince on Deckers's asserted UGG trade dresses on genericness and rejected Deckers's "knockoff/predate" objections to comparator products. *Deckers Outdoor Corp. v. Last Brand, In*c., No. 23-cv-04850-AMO, ECF No. 203, at 7–8 (N.D. Cal. Oct. 2, 2025).

7. The asserted elements are also aesthetically and/or utilitarianly functional (e.g., exposed shearling, binding, overall clog silhouette, platform sole proportions), such that exclusive rights would hinder competition in basic shearling footwear.

8. Deckers has not plausibly alleged secondary meaning in the "Tazz Trade Dress" as of the first use by the Defendant Store, and the widespread marketplace use of similar configurations by third parties undermines any claim of source-identifying significance. (See Exhibit 1 screenshots Deckers relies on to claim similarity across many independent sellers).

**Prayer (Count Two)**: Declaratory judgment that the alleged "Tazz Trade Dress" is generic/functional and lacks secondary meaning, and therefore is not protectable under federal or Illinois law.

## Count Three

### Declaratory Judgment of No Violation of the Illinois UDTPA

9. Because the alleged "Tazz Trade Dress" is not protectable and the Defendant Store has not engaged in actionable passing off, false association, or deception, there is no violation of the UDTPA and injunctive relief is unwarranted.

**Prayer (Count Three):** Declaratory judgment of no UDTPA violation; denial of any equitable relief; costs and such other relief as the Court deems proper.

**Relief Requested (all Counts):** (a) declarations as pleaded; (b) dismissal with prejudice of Deckers' trade dress and UDTPA claims as to the Defendant Store; (c) attorneys' fees and costs as permitted by law; and (d) all further proper relief.

Dated: November 14, 2025.  Respectfully submitted,

By: /s/ *Benjamin Solter*
Benjamin Solter
**Cross-Border Counselor LLP**
7755 Center Ave., Suite 1100
Huntington Beach, CA 92647
Direct Telephone No.: (781) 752-6369
Office Telephone No.:
(858) 338-3383
bsolter@cbcounselor.com