IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>A1VPG68YJ5DJCK, et al.,<br><br>        Defendants. | Case No. 25-cv-09863<br><br>**Judge Andrea R. Wood**<br><br>**Magistrate Judge Maria Valdez** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
PARTIAL RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

      Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff") responds in opposition to Defendant FITORY-SHOES's ("Defendant") Motion to Dismiss Complaint [20] (the "Motion").[1] Plaintiff has sufficiently pled trade dress infringement and joinder, and Defendant's challenges to the merits of Plaintiff's claim are inappropriate at this stage. As such, Plaintiff requests that the Court deny the Motion.

---

[1] The Motion only pertains to Count I of the Complaint [1] for trade dress infringement under 15 U.S.C. § 1125(a). The Motion does not challenge Count II of the Complaint [1] for violation of the Illinois Uniform Deceptive Trade Practices Act. *See* [1] at ¶¶ 29-32.

**BACKGROUND**

On August 18, 2025, Deckers filed this action against multiple e-commerce stores that were and are currently infringing Deckers' Tazz® Trade Dress. [1]. Deckers is well-known throughout the United States and elsewhere as a source of high quality footwear products, including the famous UGG brand of premium comfort-leisure footwear (the "UGG Products"). [1] at ¶ 5. UGG Products are distributed and sold to consumers through retailers throughout the United States, including over 100 authorized retailers in Illinois, the ugg.com website, and UGG Concept Stores. *Id*. In the United States and around the world, the UGG brand has come to symbolize high quality, and UGG Products are among the most recognizable premium footwear products in the world. *Id*. at 6.

The UGG® Tazz®, the embodiment of the Tazz® Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. [1] at ¶ 20. The UGG® Tazz® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tazz®, and has graced the pages of many popular magazines nationwide and internationally. *Id*. Examples of the Tazz® Trade Dress' distinctive appearance as a whole are shown below (*Id*. at ¶ 18):



The Tazz® Trade Dres is comprised of the following non-functional elements: (a) An embroidered braid around the opening of the upper; (b) A raised prominent seam on the front part

1

of the upper running longitudinally down the center of the upper; (c) A raised and rounded dome shaped toe; (d) A brushed suede-like exterior; and (e) A thick, platform outsole. [1] at ¶ 17.

The Defendants named in this suit are e-commerce store operators who design, manufacture, import, distribute, advertise, market, offer for sale, and sell footwear products in the U.S. that infringe upon Deckers' Tazz® Trade Dress (the "Infringing Product"). [1] at ¶ 3; *see* [1-1]. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. *Id.*

On October 14, 2025, Defendant filed the Motion. [20]. The Motion alleges that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because: (1) the Tazz® Trade Dress is functional and lacks distinctiveness; (2) there is no likelihood of confusion; (3) Defendant does not infringe the "TAZZ" trademark, and; (4) joinder of the Defendants is improper. *See* [20].

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678. "In deciding a motion to dismiss, the court accepts the well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff." *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 796 (N.D. Ill. 2020) (citing *Manistee Apts., LLC v. City of Chi.*, 844 F.3d 630, 633 (7th Cir. 2016)).

In order to prevail on a claim of trade dress infringement, a plaintiff must show that: (1) its trade dress is either inherently distinctive or has acquired secondary meaning; (2) its trade dress is nonfunctional, and; (3) that the similarity of the defendant's trade dress causes a likelihood of confusion on the part of consumers as to the source or affiliation of the products. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005); *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 285, 291 (7th Cir. 1998).

## ARGUMENT

**I. Deckers Has Sufficiently Pled That the Tazz® Trade Dress is Non-Functional, is Inherently Distinctive, and Has Acquired Secondary Meaning.**

Defendant argues that Plaintiff's trade dress is functional, and "even if non functional, Plaintiff fails to plead secondary meaning…" [20] at pp. 2-3. Defendant's arguments on the merits regarding the functionality and distinctiveness of the Tazz® Trade Dress are improper at this stage, and Plaintiff has sufficiently pled both non-functionality and that the Tazz® Trade Dress is inherently distinctive and has acquired secondary meaning. [1] at ¶¶ 18-23. Accordingly, the Complaint cannot be dismissed under these grounds.

**A. Defendant's Argument That the Tazz® Trade Dress is Functional is Improper at this Stage, and Deckers has Sufficiently Pled That the Tazz® Trade Dress is Non-Functional.**

Trade dress is functional if "it is essential to the use or purpose of the [product] or affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S.23, 35, (2001) (internal quotation marks and citation omitted). *See New NGC, Inc. v. Alpinebay, Inc.*, 2019 U.S. Dist. LEXIS 236470, at *6 (N.D. Ill. Sep. 26, 2019) ("Trade dress is functional if it is 'essential to the use or purpose' of the product or affects the product's cost or quality, or if exclusive use of the claimed trade dress would put competitors at a significant non-reputation-related disadvantage."). "[I]f a design enables a product to operate, or improves on a substitute design in

3

some way (such as by making the product cheaper, faster, lighter, or stronger), then the design cannot be trademarked; it is functional because consumers would pay to have it rather than be indifferent toward or pay to avoid it." *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010).

Here, Plaintiff has sufficiently pled that the Tazz® Trade Dress is non-functional. Specifically, Plaintiff has alleged the following:

- "The Tazz® Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry." [1] at ¶ 18.

- "The design of the Tazz® Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Tazz® Trade Dress. The combination of features comprising the Tazz® Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Tazz®, the embodiment of the Tazz® Trade Dress, as a distinct product originating solely from Deckers." [1] at ¶ 19.

- "There are numerous other shoe designs in the footwear industry, none of which necessitate copying or imitating the Tazz® Trade Dress." [1] at ¶ 23.

Plaintiff has therefore plausibly alleged that the Tazz® Trade Dress is non-functional. *See Millenium Outdoors, LLC v. Leader Access., LLC*, 2025 U.S. Dist. LEXIS 215085 (W.D. Wis. Oct. 30, 2025) (finding Plaintiff had pled "more than enough to support a plausible inference that the trade dress is distinctive and non-functional" where Plaintiff alleged the trade dress "does not affect the cost or quality of the boat seat or serve any functional purpose," "does not put [defendant's] competitors at a significant reputation-related disadvantage," and "is not the only option for the design of a boat seat.").

Rather than challenge the sufficiency of the pleadings, Defendant instead argues the merits of whether the Tazz® Trade Dress is functional. [20] at p. 3. This is a question of fact, and it is inappropriate to resolve at the pleading stage. *See Trove Brands, Ltd. Liab. Co. v. Cal. Innovations*

4

*Inc.*, 2021 U.S. Dist. LEXIS 220983, at *7 (N.D. Ill. Nov. 16, 2021) ("[F]unctionality is typically a question of fact, and inappropriate for resolution at the pleadings stage."); *See also Midwest Goods Inc. v. Breeze Smoke LLC*, 2024 U.S. Dist. LEXIS 96061, at *12 (N.D. Ill. May 30, 2024) (Court denying motion to dismiss challenging functionality where "as long as [plaintiff's] allegations are plausible…it should have the opportunity to produce additional evidence at a later stage of the case."); *Deckers Outdoor Corp. v. Next Step Grp., Inc*., 2024 U.S. Dist. LEXIS 127987, at *10-11 (S.D.N.Y. July 18, 2024) ("[F]unctionality is a question of fact that makes dismissal at the pleading stage inappropriate."); *Rothy's, Inc. v. JKM Techs., LLC*, 360 F. Supp. 3d 373, 384 (W.D. Va. 2018) ("Because functionality 'involves an inherently factual review,' requiring a plaintiff 'to detail every contour of their trade dress claims run[s] afoul of Rule 8's pleading standard.'").[2]

Aside from arguing the merits of its functionality claim, Defendant mentions that "Plaintiff's conclusory assertion of non-functionality (Compl. ¶ 13) is insufficient without facts showing alternative designs would not impair utility," and cites to *Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 357 F.3d 649, 653 (7th Cir. 2003) to support this contention. [20] at p. 3. However, nowhere in the *Eco Mfg. LLC* decision does the Seventh Circuit hold that a Plaintiff must allege in its pleadings a "showing [that] alternative designs would not impair utility." [20] at p. 3. *Eco Mfg. LLC* concerned evaluating a factual finding of whether defendant had trade dress rights in allegedly non-functional, ornamental features of an expired utility patent. *Eco Mfg. LLC*, 357 F.3d

---

[2] None of the cases cited by Defendant in support of its functionality argument concerned adjudication of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See TrafFix Devices, Inc.*, 532 U.S. at 32-33 (The Supreme Court reversing the Sixth Circuit's decision to uphold the district court's finding that no trade dress infringement had occurred on summary judgment); *Jay Franco & Sons, Inc.*, 615 F.3d at 860-61 (Seventh Circuit affirming the district court's ruling on summary judgment); *Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 357 F.3d 649, 653 (7th Cir. 2003) (Seventh Circuit adjudicating an appeal from a denial to issue a preliminary injunction).

at 653-55. The Seventh Circuit affirmed the district court's ruling that denied injunctive relief to the defendant. *Id*. at 655. *Eco Mfg. LLC* did not involve a motion to dismiss for failure to state a claim, and the Seventh Circuit did not opine on the necessary requirements for sufficiently pleading non-functionality.

Accordingly, Defendant's challenges are without merit, and Plaintiff has sufficiently pled that the Tazz® Trade Dress is non-functional.

### B. Deckers Has Sufficiently Pled That The Tazz® Trade Dress is Inherently Distinctive and Has Acquired Secondary Meaning.

As an initial matter, Defendant fails to address the fact that Plaintiff has alleged that the Tazz® Trade Dress is inherently distinctive. *See Comput. Care v. Serv. Sys. Enters.*, 982 F.2d 1063, 1067 (7th Cir. 1992) ("In order to prove trade dress infringement, the plaintiff must establish that: (1) its trade dress is 'inherently distinctive' *or* has acquired 'secondary meaning'…") (emphasis added). "A plaintiff's trade dress is inherently distinctive, and therefore protectable without proof of secondary meaning if it is sufficiently distinctive to allow consumers to identify the product from the trade dress." *Id*. at 1069. Here, Plaintiff alleged that "[t]he Tazz® Trade Dress is unique and inherently distinctive." [1] at ¶ 17. Plaintiff has, therefore, sufficiently alleged that the Tazz® Trade Dress is inherently distinctive, and determining whether this allegation is true requires a finding of fact that is better addressed beyond the pleading stage. *See Comput. Care.*, 982 F.2d at 1069 ("A district court's determination that a plaintiff's trade dress is inherently descriptive is a finding of fact, which we will reject only if clearly erroneous.").

Plaintiff has also sufficiently pled that the Tazz® Trade Dress has acquired secondary meaning. "Secondary meaning is used generally to indicate that a mark or dress 'has come through use to be uniquely associated with a specific source.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4, (1992). "A plaintiff can show secondary meaning through evidence that 'in the

6

minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Trove Brands, Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 220983, at *8.

Defendant argues that Plaintiff failed to plead the Tazz® Trade Dress had acquired secondary meaning because "[b]are allegations of 'extensive sales and advertising' (Compl. 14) are formulaic and lack specifics like market share or consumer surveys."[3] [20] at p. 3. For one, Plaintiff is not required to put forth evidence (e.g., consumer surveys) in its Complaint in order to sufficiently plead secondary meaning. *Trove Brands, Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 220983, at *9 ("[W]hether a mark has acquired secondary meaning involves a fact-specific inquiry generally not appropriate for decision on a motion to dismiss."); *see also Dean v. Cortes*, 2018 U.S. Dist. LEXIS 116587 at *14 (C.D. Cal. July 12, 2018) ("[C]ourts have determined that secondary meaning need only be pled generally for purposes of defeating a motion to dismiss.").

Plaintiff also pled more than "[b]are allegations of 'extensive sales and advertising.'" *See Trove Brands, Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 220983, at *10 ("At this stage, [plaintiff] need only plead a plausible link in the minds of consumers between the [product] and its source."). Specifically, Plaintiff alleged the following:

- "The UGG® Tazz®, the embodiment of the Tazz® Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Tazz® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tazz® and graced the pages of many popular magazines nationwide and internationally." [1] at ¶ 20.

---

[3] Defendant provides the following parenthetical citation to support this contention: "*See Flexible Steel Lacing Co. v. Conveyor Accessories, Inc*., 955 F.3d 632, 644 (7th Cir. 2020) (dismissing for failure to plead secondary meaning with particularity)." [20] at p. 3. *Flexible Steel Lacing Co.* concerned an appeal from a district court's ruling on summary judgment that the plaintiff's trade dress was functional. *Id*. at 636. This case did not concern a Rule 12(b)(6) motion to dismiss (as alluded to by Defendant), nor did it address the issue of secondary meaning.

- "Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Tazz® Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Tazz® Trade Dress." [1] at ¶ 21.

- "Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Tazz® Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Indeed, Deckers has sold millions of dollars' worth of UGG® Tazz®, the embodiment of the Tazz® Trade Dress. Accordingly, the Tazz® Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress." [1] at ¶ 22.

As indicated by the above, Plaintiff has sufficiently pled that the Tazz® Trade Dress has "achieved a high degree of consumer recognition and secondary meaning."

## II. Defendant Improperly Argues the Merits of Plaintiff's Trade Dress Infringement Claim in a Rule 12(b)(6) Motion to Dismiss.

Defendant argues there is no likelihood that consumers will be confused as to the source of the Infringing Product, and that the Infringing Product does not infringe the Tazz® Trade Dress ([20] at pp. 4-5). These arguments are not proper through a Rule 12(b)(6) motion to dismiss. "'The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.'" *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989)); *see also JH v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2025 U.S. Dist. LEXIS 83662, at *5 (N.D. Ill. Apr. 29, 2025) ("A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits."). Defendant claims "no consumer would mistake Defendant's $26.99 generic slippers for Plaintiff's premium UGG products" and conducts a brief infringement analysis, but Defendant fails to challenge the sufficiency of Plaintiff's pleadings. [20] at pp. 4-5.

Plaintiff has nonetheless sufficiently pled that there is a likelihood that consumers will be confused as to the source of Defendant's Infringing Product. *Top Tobacco v. Fantasia Distrib.*

8

*Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) ("[T]his Court's role at the motion to dismiss stage 'is limited to assessing whether [Plaintiffs have] pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of [their] claim.""). The Seventh Circuit "uses the following seven factors to determine [ ] likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015); *see also Mighty Deer Lick, Inc. v. Morton Salt, Inc.*, 2020 U.S. Dist. LEXIS 23206, at *16-19 (N.D. Ill. Feb. 11, 2020) (using the likelihood of confusion factors to address the defendant's argument on a motion to dismiss that the plaintiff did not allege likelihood of confusion).

With respect to factor (1), Exhibit 1 to the Complaint provides screenshot evidence of the named Defendants' Infringing Products being offered for sale. *See* [1-1]. As demonstrated by the below, Plaintiff's Complaint puts Defendant on notice of the similarity between the Tazz® Trade Dress and its Infringing Product.



| Tazz® Trade Dress [1] at ¶ 18 | Defendant's Infringing Product [1-1] at pp. 39-41 |

Factor (2) further weighs in Plaintiff's favor because Plaintiff and Defendant both sell footwear and "Defendant[] [is a] competitor[] of Deckers and Defendant[] introduced Infringing Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Tazz®." [1] at ¶ 23.

With respect to factor (3), Plaintiff and Defendant both market their products online and sell to consumers in Illinois. [1] at ¶¶ 3, 5. Factor (5) weighs heavily in Plaintiff's favor because Plaintiff spends millions of dollars annually on the advertising of UGG® products and footwear embodying the Tazz® Trade Dress, the UGG® Tazz® (the embodiment of the Tazz® Trade Dress) is one of the most well-recognized and commercially successful styles of UGG® brand footwear products which has resulted in millions in sales, and the UGG® Tazz® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tazz®. *Id*. at ¶¶ 20-22; *see Sorensen,* 792 F.3d at 731 ("A mark's strength ordinarily corresponds to its economic and marketing strength.").

Factor (7) further weighs in Plaintiff's favor because Plaintiff alleged that Defendant is "well aware of the fame and strength of the Tazz® Trade Dress and the goodwill associated

therewith," Defendant "introduced Infringing Products into the stream of commerce in an effort to exploit Deckers' goodwill and reputation of the UGG® Tazz®," and Defendant has "acted in bad faith and Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or cause mistake or to deceive consumers as to the affiliation, connection, or association of the Infringing Products with Deckers, and/or the origin, sponsorship, or approval of the Infringing Products by Deckers." [1] at ¶¶ 14-15, 23. "No single factor is dispositive." *See Packman v. Chicago Trib. Co.*, 267 F.3d 628, 643 (7th Cir. 2001); *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1016 (N.D. Ill. 2014) ("[T]he absence of factual allegations demonstrating actual confusion is not dispositive of the likelihood of confusion."). Accordingly, Plaintiff has sufficiently pled a likelihood of confusion "above a speculative level." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *see Trove Brands,* 2021 U.S. Dist. LEXIS 220983, at *16 ("Courts from this district have similarly found that complaints that plead sufficient facts pertaining to four of the seven factors adequately allege likelihood of confusion.").

### III. Defendant's Argument That It Does Not Infringe The "TAZZ" Trademark is Irrelevant.

Defendant moves to dismiss a claim for trademark infringement under 15 U.S.C. § 1114. [20] at p. 5. Defendant states that "Plaintiff's Complaint alleges trademark infringement under 15 U.S.C. § 1114." [20] at p. 1. However, Plaintiff has not raised a claim for trademark infringement under 15 U.S.C. § 1114 and has not alleged that Defendant infringes the "TAZZ" trademark. Accordingly, Section IV of Defendant's Motion should be disregarded.

### IV. Plaintiff Has Sufficiently Pled that Joinder of the Defendants is Proper.

Defendant's challenge to the propriety of joinder is not grounds for dismissal under Fed. R. Civ. P. 12(b)(6). *See Winston v. Scott*, 718 F. App'x 438, 440 (7th Cir. 2018) ("[M]isjoinder of parties is not a ground for dismissing an action."); *Alvarez v. City of Chi.*, 605 F.3d 445, 450 (7th

11

Cir. 2010) ("[M]isjoinder of parties is never a ground for dismissing an action."). Accordingly, even if joinder was found to be improper, it should not result in dismissal of Plaintiff's claims.

Contrary to Defendant's assertions, Plaintiff has sufficiently pled that joinder is appropriate in this case under Fed. R. Civ. P. 20.[4] "In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Desai v. ADT Sec. Services, Inc.*, 2011 U.S. Dist. LEXIS 77457, at *8 (N.D. Ill. July 18, 2011). A court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Twombly*, 550 U.S. at 555). The plaintiff must only put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th. Cir. 2009).

Joinder under Rule 20 is a procedural "device centrally concerned with the economies of aggregating small claims" meant to "enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). It has no effect on substantive rights, *McGilvray v. Powell 700 N.*, 186 F.2d 909, 911 (7th Cir. 1951), and must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). Rule 20 provides that "Defendants ... may be joined in one action as defendants if: (A) any right to relief is asserted against them ... with respect to or arising out of the same

---

[4] Defendant alleges that the present action is a "Schedule A" case. [20] at p. 6. This is not true.

12

transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Courts have applied this "same transaction or occurrence" requirement using a case-by-case approach based on a flexible standard. This promotes judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20. *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."). "The purpose behind the [logical relationship test] is judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background." *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994). "But '[a]bsolute identity of all events is unnecessary' for joinder." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021).

Rule 20 also does not define "occurrence" and courts have not considered the meaning of "occurrence" apart from the meaning of "transaction." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). However, "canons of construction ordinarily suggest that terms connected by a disjunctive . . . be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." *Id.* An "occurrence" is defined as something that simply happens or appears, and is not necessarily the product of joint or coordinated action. *Id.* Without an objective basis to define occurrence or series of occurrences, "the proper analysis is an investigation of the fairest and most efficient way for a plaintiff to seek relief for the harm they have alleged." *Id.* at 513; *see also* Order at 6-7, *Milwaukee Electric Tool Corporation v. The Individuals, et al.*, No. 24-cv-12487 (N.D. Ill. May 28, 2025), No. 156 (Kocoras, J.) (unpublished).

Joinder of Defendants is proper because Rule 20's inclusion of "occurrence" allows Plaintiff to join defendants who participate in reasonably related unlawful occurrences in a single case. *Bose Corp.*, 334 F.R.D. at 517; *see also* Order at 2, *Your True Nature, Inc. v. The Individuals, et al.*, No. 24-cv-11162 (N.D. Ill. July 10, 2025), No. 173 (Bucklo, J.) (unpublished). The well-pleaded allegations in Plaintiff's Complaint establish a *prima facie* case that Defendants are working in a similar manner and during the same time period to sell unauthorized products, as part of the same "occurrence" or "series of . . . occurrences" of mass harm, *i.e.*, the swarm of all Defendants attacking Plaintiff's Tazz® Trade Dress. *Id*. at 516; *cf. Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 166 (E.D. Mich.) (citing *United States v. Mississippi*, 380 U.S. 128, 142, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965)).

Here, Plaintiff has alleged that "Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences." [1], ¶¶ 3, 12. As demonstrated by the screenshots of Defendants' Infringing Products in Exhibit 1 to the Complaint, Defendants are offering for sale and selling through online marketplace platforms the same or similar accused product, *i.e.*, slippers/clogs that fully embody the Tazz® Trade Dress.[5] *Id*. at ¶¶ 3, 14; [1-1]. Defendants operate under a cloak of anonymity by using "one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation." *Id*. at ¶ 3. "This common, surreptitious conduct is the 'defining aspect of the harm' alleged by [Plaintiff] and creates a logical relationship among the parties and claims in the case." *Neman Bros. & Assocs., Inc. v. P'ships, et al.*, 2024 U.S. Dist. LEXIS 223383, at *10-11 (N.D. Ill. Dec. 10, 2024) (Tharp, J.); *see also* Order at 2, *Zou v. The Entities, et al.*, No. 23-cv-16600 (N.D.

---

[5] In utility and design patent cases, 35 U.S.C. § 299 allows for joinder when defendants are selling "the same accused product or process." *See* 35 U.S.C. § 299.

Ill. Mar. 8, 2024), No. 60 (Kendall, J.) (unpublished) ("Taking [Plaintiff's] allegations as true, there is a clear logical relationship between Defendants' actions, as each Defendant copied [Plaintiff's] work, manufactured counterfeit versions, and set up online stores to sell the counterfeits under a cloak of anonymity."). Plaintiff has, therefore, established a *prima facie* case for the propriety of joinder.

Additionally, Defendant does not face any prejudice or delay from being joined at this stage, nor does Defendant argue that it will face any prejudice from being joined in this matter. Order at 2, *Zou*, No. 23-cv-16600, No. 60 ("In addition to the two requirements of Rule 20(a)(2), the Court also considers whether joinder would prejudice any party or result in needless delay."); *Neman Bros. & Assocs.* 2024 U.S. Dist. LEXIS 223383, at *11 ("[defendant] also does not point to any prejudice or expense it will incur if joinder is permitted, nor does the Court see any."); Order at 2, *Neman Brothers & Associates, Inc. v. The P'ships, et al.*, No. 24-cv-05666 (N.D. Ill. Jan. 23, 2024), No. 112 (Tharp, J.) (unpublished) ("The Court also cannot see any prejudice or expense the defendants will incur if joinder is permitted, particularly in the nascent stages of this action."). Accordingly, "[d]iscretionary joinder [is] the best path forward." *Merch Traffic, LLC v. The Partnerships, et al.*, No. 25-cv-01180 (N.D. Ill. Apr. 17, 2025). No. 36 (Kendall, J.) (unpublished).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion [20].

Dated this 1st day of December 2025.　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Justin R. Gaudio
　　　　　　　　　　　　　　　　　　　Amy C. Ziegler
　　　　　　　　　　　　　　　　　　　Justin R. Gaudio
　　　　　　　　　　　　　　　　　　　Justin T. Joseph
　　　　　　　　　　　　　　　　　　　Thomas J. Juettner
　　　　　　　　　　　　　　　　　　　Greer, Burns & Crain, Ltd.
　　　　　　　　　　　　　　　　　　　200 West Madison Street, Suite 2100
　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　312.360.0080 / 312.360.9315 (facsimile)
　　　　　　　　　　　　　　　　　　　aziegler@gbc.law
　　　　　　　　　　　　　　　　　　　jgaudio@gbc.law
　　　　　　　　　　　　　　　　　　　jjoseph@gbc.law
　　　　　　　　　　　　　　　　　　　tjjuettner@gbc.law

　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Deckers Outdoor Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of December 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to the e-mail addresses identified in **Exhibit A** hereto that includes a link to said website.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiff Deckers Outdoor Corporation*